UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WANDA DIAZ, MOISES SANTANA,
GILBERTO DIAZ, TANAIRI, an infant, and
MOISES SANTANA, JR., an infant, the infants
by their parent and guardian WANDA DIAZ,

                          Plaintiffs,

        -against-

CITY OF NEW YORK, P.O. ANGELO
BURGOS,  SHIELD # 17545 and
UNIDENTIFIED NEW YORK CITY
POLICE OFFICERS

                          Defendants.

-------------------------------------------------------------X

**MEMORANDUM AND
ORDER**
00-CV-2944 (JMA)

APPEARANCES:

       Jennifer C. Friedrich
       Lewis Johs Avallone Aviles, LLP
       425 Broadhollow Road
       Melville, NY 11747
       *Attorney for Plaintiffs*

       Michael A. Cardozo
       Corporation Counsel of the City of New York
       100 Church Street
       New York, New York 10007
       *Attorney for Defendants*
             *By:*   *Leticia J. Santiago*
                    *Assistant Corporation Counsel*

       Julia Chung
       Katten Muchin Rosenman LLP
       575 Madison Avenue
       New York, NY 10022
       *Attorney for Defendants*

**AZRACK, United States Magistrate Judge:**

Plaintiffs Wanda Diaz, Moises Santana, Gilberto Diaz, Tanairi Rios, and Moises Santana, Jr. bring this action against the City of New York, police officer Angelo Burgos, and "Unidentified New York City Police Officers" alleging violations of their civil rights under 42 U.S.C. § 1983 ("Section 1983") and New York law. More specifically, plaintiffs allege that defendants violated their Fourth Amendment rights by conducting an illegal search and seizure, using unreasonable force, and unlawfully destroying plaintiffs' property. Plaintiffs further allege that defendants have interfered with their constitutional right to family integrity under the Ninth Amendment. Plaintiffs claim that a captain supervising the officers conducting the search should be liable for failing to supervise the officers, and that the City of New York is liable for a policy and custom that led to the violations attributed to the officers. Plaintiffs further claim that defendants failed to intervene to prevent these alleged constitutional violations. And finally, plaintiffs allege that defendants committed assault and battery, false arrest, and the negligent hiring, supervising and training of officers under New York law.

By motion dated July 15, 2005, defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties consented to have a United States Magistrate Judge preside over this case for all purposes, including entry of judgment, pursuant to 28 U.S.C. § 636(c). Viewing the evidence in a light most favorable to the plaintiffs, I grant summary judgment as to plaintiffs': (1) Fourth Amendment claims of unlawful search and seizure and unlawful detention; (2) Ninth Amendment claims of interference with family integrity; (3) Supervisory Liability claim; (4) Monell claim against defendant City of New York; and (5) New York State false arrest and negligent hiring, supervision and training claims. I deny summary judgment on plaintiffs': (1) Fourth Amendment claims of excessive force, destruction of property and failure to

intervene; and (2) New York State assault and battery claims. In addition, I find that summary judgment should not be granted based on the individual officers' claim of qualified immunity to these surviving claims.

## I. FACTS

The following facts are taken from the parties' Local Civil Rule 56.1 Statements and the Declaration of Wanda Diaz, and are undisputed unless otherwise noted. On February 16, 2006, New York City Police Officer Angelo Burgos obtained a search warrant for 879 Bergen Street, Apartment 12A, in Brooklyn, New York based on information provided by a confidential informant ("CI"). (Defs.' Rule 56.1 Stmt. ¶ 1.) According to Burgos' affidavit, the CI had observed Moises Santana selling drugs out of the apartment, and had observed a large quantity of heroin currently in the apartment. (Id. ¶ 2.) Based on conversations with the CI, Burgos believed that heroin trafficking was taking place at 879 Bergen Street, Apartment 12A. (Id. ¶ 3.) A State Supreme Court Justice granted a "no knock" warrant for a search of 879 Bergen Street based on Officer Burgos' affidavit and the testimony of the CI. (Id. ¶ 7; Id. Ex. 3) The "no knock" provision was approved because the evidence sought in the warrant, heroin, could be disposed of quickly. (Id. ¶ 8.)

On February 23, 1999 at approximately 7:30 pm Officer Burgos, along with other police officers and an Emergency Service Unit ("ESU"), arrived at 879 Bergen Street to execute the warrant. (Defs.' Rule 56.1 Stmt. ¶ 9.) Officer Burgos pointed ESU to the door of Apartment 12A and waited in the stairwell while ESU executed the entry. (Id. ¶ 10.) Once ESU secured the apartment, they gave the officers an "all clear" signal and the officers, including Burgos, entered the apartment. (Id. ¶ 12.)

Wanda Diaz was at home with the father of her children, Moises Santana, Sr., and her children Tanairi Rios and Moises Santana, Jr., when her door was forced open with a loud crashing noise as police officers entered the apartment. (Declaration of Wanda Diaz "Diaz Declaration" ¶¶ 3-4.) Moises Santana, Sr. and Wanda Diaz were handcuffed. (Defs.' Rule 56.1 Stmt. ¶ 13.) Diaz described that a police officer "pushed me to the floor with his knee in my back" when she was handcuffed. (Diaz Declaration ¶ 5.) The officers "were yelling and screaming at me to get down on the floor [sic] mixed with obscenities" and "stuck a shot gun in my face and told me to 'Stay still!'" (Diaz Declaration ¶ 6.) Diaz also contends that the officers repeatedly struck her on her legs with the end of the shot gun. (Diaz Declaration ¶ 6.) The officers then "put the shot gun to my head and yelled 'Tell me where the fucking drugs are,' to which she responded 'I don't know what you are talking about.'" (Diaz Declaration ¶ 7.) Diaz states that she was bleeding from her right knee as a result of being pushed onto the floor. (Id. ¶ 7.)

Diaz saw Santana, Sr. in the kitchen with red beams of light on his forehead, and believed them to be targeting lights for firearms; "I thought we were all going to be shot and die." (Id. ¶ 9.) The children remained in their bedroom during the search and only came out briefly so that the officers could search their bedroom. (Defs.' Rule 56.1 Stmt. ¶ 15.) The defendants contend that a female officer was present with the children during the search, but Diaz disputes that claim. (Defs.' Rule 56.1 Stmt. ¶ 14; Diaz Declaration ¶ 11.) Diaz asked if she could see her children, explaining that one of her sons suffered from a debilitating asthma condition, but the officers refused. (Diaz Declaration ¶¶ 5, 9.) Diaz then asked if her handcuffs could be loosened because she was beginning to lose feeling in one of her arms, but the officers refused. (Id. ¶ 12.) She claims that Officer Burgos took her into the bathroom and "continuously slammed the back of [her] head into the wall,"

while screaming at her. (Id. ¶ 13.) She also states that he threatened to take away her children, and call the Welfare Department. (Id.)

The officers searched the apartment. (Defs.' Rule 56.1 Stmt. ¶ 16.) Diaz and Moises, Sr. informed the officers that there was $4,700.00 in cash in the apartment, and when the officers could not find it they grabbed Moises, Sr. and screamed for him to show them where the money was being held. (Diaz Declaration ¶ 15.) Moises, Sr. then showed the officers where the cash was hidden. (Id.) When Burgos asked Santana to whom the money belonged, Santana stated that it belonged to him. (Defs.' Rule 56.1 Stmt. ¶ 17.) After further inquiry, Burgos learned that Santana was on public assistance. (Defs.' Rule 56.1 Stmt. ¶ 18.) Lieutenant Mihnovich then instructed Burgos to take the money for forfeiture proceedings because Santana could not account for it. (Defs.' Rule 56.1 Stmt. ¶ 18.)

Diaz alleges that she and Moises, Sr. were held on the couch for two hours, and then held standing in their bedroom for two more hours. (Diaz Declaration ¶ 16.) She also contends that the officers "made a mess" and destroyed personal property and furniture, including her platform bed. (Id. ¶ 19.) A police captain arrived approximately five hours after the search began, and Diaz claims that "the physical and verbal abuse stopped" once he arrived. (Id. ¶ 20.) Diaz heard the captain say "This was a false alarm." (Id.) Diaz claims that the children were crying, scared and upset, and Moises, Jr. said he was having trouble breathing so Diaz gave him an oxygen treatment. (Diaz Declaration ¶ 21.)

Burgos took photographs of the apartment, and told Santana and Diaz to come to the precinct to receive copies of the receipt for the money taken from the apartment. (Defs.' Rule 56.1 Stmt. ¶¶ 20-21; See Defs.' Memo. in Supp. of Summ. J. Ex. 8) Diaz and the children went to Interfaith

Hospital, and Diaz claims that she suffered leg pain from being struck with the shot gun, her right knee was swollen, she had limited range of motion, and she was unable to sleep. (Diaz Declaration ¶ 22.) Diaz claims that she "continues to seek psychiatric treatment," she is "scared of everyone and everything," and she "dropped out of school and [is] scared to go outside." (Diaz Declaration ¶ 23.)

## II. DISCUSSION

### 1. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists," Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994), but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

In determining whether any material facts are in dispute, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."

Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting

Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.1993)); see also Anderson,

477 U.S. at 255. To defeat a properly supported motion for summary judgment, the non-moving

party must "'set forth specific facts showing that there is a genuine issue for trial.'" Matsushita, 475

U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party, however, "must do more than

simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations

omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting

summary judgment. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); Kulak v. City

of New York, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must come forth with

"significant probative evidence" demonstrating that a factual dispute does in fact exist. Anderson,

477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Id. at 249-250 (citations omitted).

**2. Section 1983**

Plaintiffs seek to recover from defendants under 42 U.S.C. § 1983. To establish liability

under Section 1983, plaintiffs must show that (1) the defendants acted under color of state law and

(2) as a result of the defendants' actions, the plaintiffs suffered a deprivation of rights secured by

the Constitution and laws of the United States. Annis v. County of Westchester, 136 F.3d 239, 245

(2d Cir. 1998); Eagelson v. Guido, 41 F.3d 865, 872 (2d Cir. 1994); Lehman v. Kornblau, 134 F.

Supp. 2d 281, 287 (E.D.N.Y. 2001). Section 1983 creates no substantive rights, but "provides

remedies for deprivations of rights established elsewhere." Oklahoma City v. Tuttle, 471 U.S. 808,

816 (1985) (plurality opinion).

Here, the fact that the officers acted "under color of state law" is not disputed, because the actions giving rise to the plaintiffs' claims were committed by police officers in the course of their duties.  See <u>Davis v. City of New York</u>, 373 F. Supp. 2d 322, 329 (S.D.N.Y. 2005) (defendants acting in their capacity as police officers were "clearly acting 'under color of state law.'") Therefore, the discussion will focus on the second element - whether as a result of the defendants' actions, the plaintiffs suffered a deprivation of their Constitutional rights.

**A. Fourth Amendment Claims**

Plaintiffs make several claims that relate to the entry and search of their apartment. Specifically, the plaintiffs claim that the defendants violated their Fourth Amendment rights by an unlawful search and seizure, the unnecessary destruction of property and the unlawful use of force. Defendants argue that they are entitled to summary judgment as to these claims.

**I) Illegal Search and Seizure**

Plaintiffs base their illegal search and seizure claim on their allegations that the officers "unreasonably and unnecessarily" searched and seized the plaintiffs' property, that the plaintiffs "remained in handcuffs for over five hours while the officers searched a small two-bedroom apartment," and that they were "verbally, mentally and physically abused by the officers during the five hours of restraint and confinement."[1]  (Pls.' Memo. in Opp. to Summ. J. 6.)

Under the Fourth Amendment, the Warrant Clause requires that, absent certain exceptions, police obtain a warrant from a neutral and detached magistrate to search a person's home.  <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 164 (1978).  A magistrate issuing a warrant must make a

-----

[1]The alleged verbal, mental and physical abuse by the officers will be addressed in the excessive force section of this decision.

probable cause determination based on the "totality of the circumstances," by making a common-sense decision based on the information set forth in the affidavit before him. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (where an informant's tip corroborated by a sworn statement by an affiant was sufficient probable cause for a warrant.) A "no knock" warrant may be obtained to search for contraband drugs. See Richards v. Wisconsin, 520 U.S. 385, 395 (1997) (holding that "knock and announce" when executing a search warrant is not needed where officers reasonably suspect that evidence might be destroyed).

The plaintiff's illegal search claim fails because defendants had a facially valid warrant based on probable cause. The officers' entry into and search of the plaintiffs' residence was lawful pursuant to a valid search warrant approved by a New York State Supreme Court Justice. The Justice's decision was based on Officer Burgos' sworn affidavit as to his conversations with the CI, as well as the CI's statement to the judge. In addition, the "no knock" provision was approved because narcotics could be disposed of quickly. Thus, the entry into and search of the plaintiffs' apartment was lawful pursuant to a valid search warrant and did not violate their constitutional rights.[2]

Even should plaintiffs contend that the warrant was issued on less than probable cause, their arguments would fail. A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991). Where a

_____

[2]The cases cited by the plaintiff for the propositions that police have limited authority to enter a dwelling in which a suspect lives, Payton v. New York, 445 U.S. 573, 603 (1980), and that police must reasonably believe that the suspect is present to enter a dwelling, United States v. Terry, 702 F.2d 299 (2d Cir. 1983) and United States v. Lauter, 57 F.3d 212 (2d Cir. 1995), are not applicable here because they address *arrest* warrants, whereas this case considers a *search* warrant.

magistrate has found that an affidavit presented to him showed that there was probable cause for the issuance of a warrant, the person challenging the affidavit must make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard to the truth, made a false statement in his affidavit and that this false statement was "necessary to the finding of probable cause." Rivera, 928 F.2d at 604 (quoting Franks, 438 U.S. at 155-56). Plaintiffs have offered no evidence that the affiant made a false statement to the judge. Plaintiffs' conclusory statement that the officers "illegally entered and searched" their home is not enough to overcome summary judgment on this claim.

The plaintiffs' assertions that their detention during the duration of the search was unreasonable is also without merit. The Supreme Court has held that a search warrant for a house "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981); see also Rivera v. United States, 928 F.2d 592, 606 (2d Cir. 1991). The "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Summers, 452 U.S. at 705. The detention of the occupants must be limited, however, and must be "substantially less intrusive" than an arrest. Id. at 702. "Thus, a detention. . .is constitutional so long as the means used to effectuate it are as minimally intrusive as possible to achieve the end of securing the home, preventing flight from the premises and ensuring the safety of officers and occupants." Barlett v. City of New York, 03-CV-1961, 2005 WL 887112, at *8 (E.D.N.Y. Feb 11, 2005), citing United States v. Pichardo, 92-CR-354, 1992 WL 249964, at *5 (S.D.N.Y. Sept. 22, 1992). The circumstances surrounding the detention must be viewed "through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training." United States v. Barlin,

686 F.2d 81, 87 (2d Cir. 1982). Furthermore, officers have authority to use handcuffs during the duration of a search for contraband. <u>Meuhler v. Mena</u>, 544 U.S. 93, 93 (2005).

Defendants contend that their search lasted "approximately two hours," (Defs.' Memo. in Supp. of Summ. J. 3) while plaintiffs allege that the search lasted five hours. (Diaz Declaration ¶¶ 16, 20.) In executing the subject warrant the officers were within lawful authority to detain and handcuff plaintiffs while conducting their lawful search. The search was not unnecessarily long or intrusive: once the search was completed, the plaintiffs were immediately released, and the officers vacated the premises. In sum, the search was according to law, and thus summary judgment is granted to defendants as to the plaintiffs' illegal search and seizure claims.

### ii) Excessive Force

Plaintiffs also contend that defendants used excessive force when an officer handcuffed Diaz tightly, pushed her to the floor, struck her on the legs with a shot gun, and hit her head against the bathroom wall, and when officers "brutally grabbed" Moises, Sr. Even if lawfully detained, a person has a constitutional right to be free from the use of excessive force. <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). All claims that law enforcement officers used excessive force in the course of a search are analyzed under the Fourth Amendment "reasonableness standard." <u>Graham</u>, 490 U.S. at 395. The pertinent inquiry is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id.</u> at 397. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Id.</u> at 396 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)). Officers may not, however, gratuitously inflict pain in a manner that is not a reasonable response to the circumstances. <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d

113, 124 (2d Cir. 2004).  The use of force beyond what is reasonably necessary to prevent violence

or the destruction of evidence violates the Fourth Amendment.  <u>Bolden v. Village of Monticello</u>, 344

F. Supp. 2d 407, 419 (S.D.N.Y. 2004).

Diaz's allegations that she was pushed to the floor, an officer repeatedly struck her on her

legs with the end of a shot gun, and an officer "continuously slammed the back of [her] head against

the wall" and Moises Sr.'s allegation that he was "brutally grabbed" are sufficient to overcome

summary judgment on their excessive force claims.  <u>See</u> <u>Robison v. Via</u>, 821 F.2d 913, 923-24 (2d

Cir. 1987) (summary judgment denied where officer pushed plaintiff against car, threw her against

the fender, and twisted her arm behind her back).  Even though these officers were conducting a

search for contraband drugs and were forced to make split-second decisions, there were no

allegations that Diaz or Moises, Sr., were armed, dangerous or a flight risk.  Given the unresolved

factual issues surrounding the force the officers used in effectuating the search, I deny summary

judgment on the excessive force claims.

### iii) Destruction of Property

Plaintiffs also claim that the officers destroyed their property during the search of their

residence.  Excessive or unnecessary destruction of property in the course of a search may violate

the Fourth Amendment, even if the entry itself was lawful.  <u>U.S. v. Ramirez</u>, 523 U.S. 65, 71 (1998).

However, it is well recognized that "officers executing search warrants on occasion must damage

property in order to perform their duty."  <u>Cody v. Mello</u>, 59 F.3d 13, 16 (2d Cir. 1995) (internal

citation omitted).  Before an officer can be liable for property damage resulting from a lawful search,

the plaintiff must establish that the police acted unreasonably or maliciously in bringing about the

damage.  <u>Notice v. Koshes</u>, 386 F. Supp. 2d 23, 27 (D. Conn. 2005).

Plaintiffs claim that photographs taken during the search reflect "the destruction of the platform bed located in the master bedroom, dismantled/destroyed furniture leaning up against the living room walls, and the contents of drawers and cabinets broken and placed on top of appliances, covering every usable surface in the home." (Pls.' Memo. in Opp. to Summ. J. 5; See Defs.' Memo. in Supp. of Summ. J. Ex. 8) In fact, most of these photographs illustrate damage or disarray consistent with a reasonable search for narcotics and narcotics paraphernalia. Three of the photographs, however, are less than clear, and therefore a genuine issue of material fact is raised as to whether unnecessary damage resulted from the officers' search. Viewing the evidence in a light most favorable to the plaintiffs, if the officers did indeed destroy the plaintiffs' platform bed, furniture and cabinets, a jury could find this damage unreasonable under the circumstances. Therefore, summary judgment is not appropriate as to the destruction of property claim.

## B. Ninth Amendment - Family Integrity

Plaintiffs claim that defendants violated their Ninth Amendment rights by interfering with their family integrity. The integrity of the family unit has been found to be protected under the Ninth Amendment. See Griswold v. Connecticut, 381 U.S. 479, 496 (1965) (Goldberg, J., concurring). In Griswold, the Supreme Court concluded that the Ninth Amendment "shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive." Griswold, 381 U.S. at 492. However, the Ninth Amendment is "a rule of construction, not one that protects any specific right, and so "[n]o independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." Williams v. Perry, 960 F. Supp. 534, 540 (D. Conn. 1996) (quoting Rini v. Zwirn, 886 F. Supp. 270 (E.D.N.Y.

1995)).  Moreover, plaintiffs' submissions contain no facts or arguments to support their Ninth Amendment claim.  Thus, summary judgment is granted as to the plaintiffs' Section 1983 claim based upon a right to family integrity under the Ninth Amendment.

## C. Supervisory Liability

Plaintiffs allege that an unidentified "Captain" who was supervising the officers conducting the search should be liable for failing to supervise or remedy the officers' unconstitutional practices. "Once the Captain entered the plaintiffs' home," plaintiffs claim, he "had the plaintiffs' released from their handcuff confinement and the abuse stopped." (Pls' Memo. in Opp. to Summ. J. 6-7.) Therefore, "[t]he Captain and defendants should be held liable for the action of its officers." Id.

The Second Circuit has found that supervisory liability under Section 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation (2) failure to remedy a wrong after being informed through a report or appeal (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such policy or custom to continue (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003), citing Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

Plaintiffs have provided no evidence that the captain participated in any constitutional violation, was informed of the wrongful acts alleged by the plaintiffs, created or allowed a custom or policy amounting to a constitutional violation, negligently supervised his subordinates, or failed

to act on information indicating that unconstitutional acts were occurring.[3]  Plaintiffs' have simply failed to set forth any specific facts showing a genuine issue for trial on this issue.  See Federal Rule of Civil Procedure 56(e).  For this reason, defendants' motion for summary judgment as to plaintiffs' supervisory liability claim is granted.

### D. Monell

A municipality may be liable for the actions of its officers under Section 1983.  "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978); see also Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).  Thus, to impose liability on a municipality, the plaintiff must prove that a municipal policy or custom caused a deprivation of the plaintiff's rights.  See Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999).  A municipality may not, however, be held liable under a general theory of respondeat superior.  Monell, 436 U.S. at 694-95.

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy officially endorsed by the municipality, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or supervise their

---

[3]This Court is incredulous that after discovery the plaintiffs were not able to identify the name of the "Captain" allegedly involved in this episode. The issue of whether this violates Federal Rule of Civil Procedure 4(m), which requires the service of process on all defendants within 120 days of filing the complaint, Soto v. Brooklyn Correctional Facility, 80 F.3d 34 (2d Cir. 1996) (where court found individual officers should have been named as defendants in civil rights action), will not be addressed because the supervisory liability claim is dismissed on the above grounds.

subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the municipal employees. David v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y 2002); Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). "[A] single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy. DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

In the instant case, plaintiffs' Monell claim is based on the same assertion as that of the supervisory liability claim: that "once the Captain entered the plaintiffs' home" he "had the plaintiffs' released from their handcuff confinement and the abuse stopped." (Pls.' Memo. in Opp. to Summ. J. 6-7.) Other than this assertion, there is no claim that the unidentified captain was an official with final decision-making authority. In addition, the record is devoid of any facts that establish the existence of a policy endorsed by the municipality, a practice so persistent it constituted a custom, or a failure by policymakers to adequately train or supervise their subordinates. In order to survive summary judgment, the plaintiff's case cannot rest on mere allegations of its pleading, but must set forth specific facts showing there is a genuine issue for trial. See Anderson, 477 U.S. at 248. Accordingly, defendant New York City's motion for summary judgment is granted on the Monell claim. See Danielak v. City of New York, 02-CV-2349, 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005) (granting summary judgment on plaintiff's Monell claim because plaintiff failed to allege a governmental custom or policy); citing Hazan v. City of New York, 98-CV-1716, 1999 WL 493352, at *2 (S.D.N.Y. Jul. 12, 1999).

**E. Failure to Intervene**

Plaintiffs further allege that defendants are liable for having failed to intervene to prevent the constitutional violations they claimed occurred. A police officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers. Ricciuti v. New York City Trans. Authority, 124 F.3d 123, 129 (2d Cir. 1997) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)). An officer cannot, however, be found liable for failure to intervene unless (1) "such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known" and (2) the failure to intervene was "under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Riccuiti, 124 F.3d at 129. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Because this Court has found that genuine issues of material fact exist as to whether defendants violated plaintiffs' constitutional right to be free of excessive force and unnecessary destruction of property, only these claims are considered for the failure to intervene discussion. It is clear that a person has a clearly established statutory or constitutional right to be free from excessive force and unnecessary destruction of their property. See Graham v. Connor, 490 U.S. 386, 394 (1989) (excessive force); U.S. v. Ramirez, 523 U.S. 65, 71, (1998) (destruction of property). In viewing the facts in a light most favorable to the plaintiffs and assuming these facts to be true (as the Court must), no reasonable officer in the searching officers' position could have thought that it was appropriate to use the amount of force alleged to be used, and commit the type of property

destruction alleged to have taken place. Disputes of fact over what happened during this search make it impossible to conclude as a matter of law that no reasonable officer in their position would have known that rights were being violated. Therefore, plaintiffs' failure to intervene claims cannot be disposed of on summary judgment, and the motion is denied as to this claim.

### 3. State Law Claims

### A. Assault and Battery

Plaintiffs bring state law claims against defendants for assault and battery. An "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact; a "battery" is an intentional wrongful physical contact with another person without consent. United Nat. Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993). With respect to actions undertaken by law enforcement officers discharging their official duties, an assault or battery takes place only if the officers used greater force than was necessary under the circumstances. Paulino v. U.S., 94-CV-6453, 1996 WL 457303, at *5 (S.D.N.Y. Aug. 13, 1996), citing Jones v. State, 33 N.Y.2d 275, 279, 352 N.Y.S.2d 169 (N.Y. 1973).

Viewing the evidence in a light most favorable to the plaintiffs, the defendant officers handcuffed Diaz tightly, pushed her to the floor with a knee in her back, struck her on the legs with a shot gun, and hit her head against the bathroom wall. In addition, Moises, Sr. claims he was "brutally grabbed" by officers. There is no allegation by the defendants that Diaz or Moises, Sr. were violent or were resisting arrest. The question of whether the officers engaged in these activities, or used more force than was necessary, is a question of fact. Therefore, on the basis of this limited information before the Court, these claims cannot be dismissed, and summary judgment is denied.

**B. False Arrest**

To establish a cause of action for false arrest, the plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See Broughton v. State of New York, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87 (N.Y. 1975), cert. denied 423 U.S. 929, 96 S.Ct. 277 (1975); see also Lee v. City of New York, 272 A.D.2d 586, 586, 709 N.Y.S.2d 102, 103 (N.Y. App. Div. 2000). A false arrest claim fails if the underlying detention occurred during a search pursuant to a warrant predicated on probable cause. Johnson v. City of New York, 05-CV-2357, 2006 WL 2354815, at *3 (S.D.N.Y. Aug. 14, 2006), citing Michigan v. Summers, 452 U.S. 692, 705 (1981). Here, the plaintiffs were detained by the police during the execution of a valid search warrant. Furthermore, since the warrant was issued by a judge, a presumption of probable cause for the detention exists. Lee, 272 A.D.2d at 586, citing Broughton, 37 N.Y.2d at 458. Therefore, defendants are granted summary judgment on the false arrest claim.

**C. Negligent Hiring and Training**

Plaintiffs claim that defendant New York City was negligent in hiring and training the police officers that conducted the search of the Diaz home. When an employee is acting withing the scope of her employment, the employer may be held liable for the employee's negligence only under a theory of respondeat superior, and not under a theory of negligent hiring or retention. See Griffin v. City of New York, 287 F. Supp. 2d 392, 397-98 (S.D.N.Y. 2002), citing Karoon v. New York City Transit Authority, 659 N.Y.S.2d 27, 27 (N.Y. App. Div. 1997). This is the case because if the employee was not negligent, there is no basis for liability, but if the employee was negligent, the employer will be liable regardless of the reasonableness of the hiring or the adequacy of the training.

See Karoon, 659 N.Y.S.2d at 27. Because it is undisputed that the defendant officers were acting within the scope of their employment when they conducted the search, the plaintiffs claims for negligent hiring and training fail as a matter of law, and summary judgment is granted.

**4. Qualified Immunity**

In addition to arguing that the plaintiffs' claims should be rejected on the merits, the defendant officers also contend that they are, in any case, entitled to qualified immunity. Government officials performing discretionary functions have qualified immunity that shields them from civil damages liability as long as their actions could reasonably have been thought consistent with rights they have allegedly violated. Anderson v. Creighton, 483 U.S. 635, 638 (1987) (internal citations omitted). The Supreme Court has established a two-part inquiry to determine whether qualified immunity bars a suit against a government official. The court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Next, the court must ask whether the officials' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Peltzer, 536 U.S. 730, 739 (2002).

As discussed above, the plaintiffs have put forth sufficient evidence to raise a material issue of fact as to whether the officers used excessive force, unnecessarily destroyed their property, and failed to intervene to prevent these violations from taking place. See, supra, sections 2(A)(iii) and (iv). Thus, the relevant question is whether a reasonable officer could have believed that these actions were lawful in light of the law and the information the officers possessed. See Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Regarding the excessive force claim, viewing the evidence in a light most favorable to the plaintiffs, a reasonable officer would have known that pushing Diaz to the floor, striking her on the legs with a shot gun, and hitting her head against the bathroom wall violated her right to be free of excessive force. Therefore, summary judgment will not be granted based on qualified immunity for this claim. See Smith v. Fields, 95-CV-8374, 2002 U.S. Dist. LEXIS 3529, at *22 n. 9 (S.D.N.Y. Mar. 1, 2002) (allegation that plaintiff was "slapped and kicked about the face sufficient to defeat claim of qualified immunity at summary judgment stage); Nogue v. City of New York, 98-CV-3058, 1999 U.S. Dist. LEXIS 13201, at *31 (E.D.N.Y. Aug. 27, 1999) (allegation that officer kicked and punched him while on the ground defeats claim of qualified immunity at summary judgment stage).

As to the destruction of property claim, if the plaintiffs' claims of malicious destruction of property are true, and the Court must assume that they are, it would be clear to a reasonable officer that this conduct was unlawful in the situation he confronted, for there would be no reason for an officer to maliciously destroy a platform bed, furniture, and cabinets in a search for contraband. Therefore, the defendants are denied summary judgment based on qualified immunity as to this claim. Finally, with regard to the failure to intervene claim, because questions of fact remain as to the extent of the force used and amount of property destroyed in the search, issues of fact also remain as to whether a reasonable officer would have known that failing to intervene was unlawful in the circumstances. In sum, defendants will not be granted qualified immunity based on the plaintiff's excessive force, destruction of property and failure to intervene claims.

### III. CONCLUSION

For the foregoing reasons, summary judgment is granted as to plaintiffs' (1) Fourth Amendment claims of unlawful search and seizure; (2) Ninth Amendment claims of interference with family integrity; (3) <u>Monell</u> claims against defendant City of New York; and (4) New York State false arrest and negligent hiring, supervision and training claims. Summary judgment is denied as to plaintiffs' (1) Fourth Amendment excessive force, destruction of property and failure to intervene claims; and (2) New York State assault and battery claims. In addition, summary judgment will not be granted based on the individual officers' claim of qualified immunity to these surviving claims.

SO ORDERED.

Dated: December 29, 2006
Brooklyn, New York

_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE